IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PRISM ELECTRICAL                           :
CONTRACTORS, INC.,
                                           :
    Plaintiff,
                                           : Case No. 3:03cv240
        vs.
                                           : JUDGE WALTER HERBERT RICE
INTERNATIONAL BROTHERHOOD
OF ELECTRICAL WORKERS                      :
LOCAL 82,
                                           :
    Defendant.

---

DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. #12) AS TO FIRST CAUSE OF ACTION IN PLAINTIFF'S COMPLAINT; SECOND CAUSE OF ACTION IN PLAINTIFF'S COMPLAINT DISMISSED, WITHOUT PREJUDICE; JUDGMENT TO BE ENTERED ON BEHALF OF DEFENDANT AND AGAINST THE PLAINTIFF ON FIRST CAUSE OF ACTION; TERMINATION ENTRY

---

In late 1999, Prism Electrical Contractors, Inc. ("Plaintiff" or "Prism"), and International Brotherhood of Electrical Workers Local 82 ("Defendant" or "Union"), entered into negotiations that eventually led to the execution of a collective bargaining agreement in January 2000. Doc. #15[1]; Doc. #21 at 16, ¶ 7 (Meece

---

[1] The copy of the collective bargaining agreement, filed by the Defendant at Docket #15, is not authenticated. Since there is no dispute between the parties as to the contents of this agreement, the Court will rely upon it, in ruling on the issues presented here. Specific instructions are given to Defendant, at the conclusion of this Decision, however, regarding placing this evidence in proper Rule 56 form.

Aff.). Prism asserts the following two claims against the Union: (1) breach of the collective bargaining agreement, and (2) making promises to induce Prism to sign the collective bargaining agreement and then not complying with the terms of the promises. Prism seeks compensatory and punitive damages, interest, costs and fees. Jurisdiction is predicated on § 301 of the Labor Management Relations Act ("LARA"), 29 U.S.C. § 185. Doc. #1. The Union has filed a motion for summary judgment as to both claims. Doc. #12.

I.  SUMMARY JUDGMENT STANDARD

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Chelates Corp. v. Citrate, 477 U.S. 317, 322 (1986). The moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323; see also Bared v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991). "Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." Talley v. Bravo Pitino Rest., Ltd., 61 F.3d 1241,

---

Failure to comply will cause this Court to vacate its ruling herein.

1245 (6th Cir. 1995); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations, it is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Chelates, 477 U.S. at 324.  "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." Mich. Prot. & Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted).  In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. Anderson, 477 U.S. at 255.

3

If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 2726 (1998).

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990); see also L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992), cert. denied, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment . . . ."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

II.     FIRST CAUSE OF ACTION – BREACH OF COLLECTIVE BARGAINING AGREEMENT

Prism's Complaint alleges that the Union violated the terms of the collective

4

bargaining agreement ("Agreement") in several respects, to wit: (i) Defendant failed to have qualified labor available upon 48 hours notice; (ii) Defendant failed to make available journeymen of sufficient ability; (iii) Defendant's journeymen failed to perform in workmanlike manner; (iv) Defendant failed to timely respond to Plaintiff's requests for information; (v) Defendant failed to provide apprentices as required; and (vi) Defendant failed to follow grievance procedures in connection with resolution of disputes between the parties. Doc. #1 at 1-3. The Complaint further alleges that Prism "repeatedly attempted to resolve the aforesaid issues pursuant to the terms of the grievance procedures outlined in the Collective Bargaining Agreement" and that the Union "has refused to consider Plaintiff's grievances and has informed Plaintiff that it 'will see (Plaintiff) in court.'" Id. at 2.

The Agreement mandates that grievances be filed within 14 days of an allegation (Doc. #15 §3.13) and, further, that "[a]ll grievances or questions in dispute shall be adjusted by the duly authorized representative of each of the parties (Id. §1.06). In the event that the representatives are unable to resolve the differences between the parties within 48 hours, they must refer the matter to the Labor-Management Committee. Id.

Despite the statements in the Complaint indicating that Prism had followed the Agreement's grievance procedures and a similar statement in Prism's memorandum opposing the Defendant's Motion for Summary Judgment (Doc. #21), the record contains no indication that Prism ever filed a grievance. Prism

sent two letters to the Union in the summer of 2002 (Doc. #15 Attach. #2 at 8-10 & 11-12[2]), but even if those letters could arguably be considered grievances, they were sent later than the required 14 day filing period. Further, Prism did not follow the Agreement's prescribed follow-up procedures, wherein representatives of the parties meet and, if the dispute is still ongoing after 48 hours, the matter is then turned over to the Labor-Management Committee.

In its memorandum opposing the Plaintiff's Motion for Summary Judgment, Prism does not attempt to justify its statement that it followed grievance procedures. In fact, Prism's owner testified at his deposition that he did not file grievances over any of the alleged disputes. Doc. #16 at 81-85, 94, 95, 102, 106, 108, 111, 117, 119 & 124. Rather, the Plaintiff asserts that it did not have to exhaust its administrative remedies because the Union had repudiated the Agreement's remedial procedures. Doc. #21 at 10. In support of its repudiation argument, Prism asserts that the Union: (1) refused to process Prism's grievances, (2) informed Prism that it "will see [Prism] in court", and (3) filed suit against Prism in common pleas court in connection with payments allegedly due, under the Agreement, without attempting to grieve the matters. Id.

The Supreme Court provides the general rule regarding exhausting grievance

---

[2]The copies of these letters are not authenticated. Since there is no dispute between the parties as to the contents of these documents, the Court will rely upon them, in ruling on the issues presented here. Specific instructions are given to Defendant, at the conclusion of this Decision, however, regarding placing this evidence in proper Rule 56 form.

6

procedures in a collective bargaining contract. A party to a such an agreement, who is seeking a remedy for an alleged breach of that agreement, must attempt to exhaust any grievance and arbitration procedures established by the agreement before bringing suit. Clayton v. Int'l Union, 451 U.S. 679, 681-82 (1981). A failure to exhaust such internal procedures will be excused, however, in two instances, to wit: (1) "when an employer's conduct amounts to a repudiation of the contractual procedures," or (2) "when a union wrongfully refuses to process the grievance." Anderson v. Ideal Basic Industries, 804 F.2d 950, 952 (6th Cir. 1986) (citing Vaca v. Sipes, 386 U.S. 171, 185-86, 87 S. Ct. 903 (1967)). Prism seems to be asserting both of these possibilities: (1) that the Union's conduct amounted to a repudiation of the contract, and (2) that the Union wrongfully refused to process Prism's grievances.

Although the parties' roles were reversed, the Sixth Circuit was faced with a similar situation to the present one in Anderson v. Ideal Basic Indus., 804 F.2d 950, 952 (6th Cir. 1986). In Anderson, the local union brought suit against both the international union, for breach of the duty of fair representation, and against the employer, for breach of the collective bargaining agreement. Id. at 951. The Anderson defendants argued that they were entitled to summary judgment, because the plaintiff did not exhaust the requisite internal grievance procedures. Id. at 952. In reviewing the district court's sustaining of the defendants' motion, the Appellate Court initially noted that,

7

> [b]efore initiating an action under section 301 of the Labor Management Relations Act, union members are required to attempt to settle the dispute through internal union procedures. <u>Republic Steel Corp. v. Maddox</u>, 379 U.S. 650, 13 L. Ed. 2d 580, 85 S. Ct. 614 (1965); <u>Poole v. Budd Co.</u>, 706 F.2d 181 (6th Cir. 1983).  Failure to exhaust internal procedures is excused when an employer's conduct amounts to a repudiation of the contractual procedures or when a union wrongfully refuses to process the grievance. <u>Vaca v. Sipes</u>, 386 U.S. 171, 185-86, 17 L. Ed. 2d 842, 87 S. Ct. 903 (1967).

<u>Id.</u>  The Court went on to hold that the facts in that case did not implicate the exhaustion exception because,

> [c]ontrary to the members' assertions, neither of these situations exist in the present case.  The Local Union members never filed a grievance with their employer, Ideal, until two weeks before they filed this lawsuit.  It is spurious, therefore, for the members to claim that Ideal's conduct amounted to a repudiation of the grievance procedure.  The members' inaction precludes a finding of repudiation by Ideal.  Similarly, the members cannot argue that the [union] was derelict in processing grievances when no grievance was filed until shortly before this action was commenced.  The members argue they were frustrated in their effort to grieve because they were told by [the union] that no grievance procedure remained after the sale of the plant.  This argument is unconvincing since grievances were eventually filed [shortly before filing the present suit].  The claim of the members that they were excused from exhausting their internal remedies is without merit.

<u>Id.</u>

It is of no consequence that in <u>Anderson</u> the union brought suit against the employer (and the international union), whereas in the present case the employer is bringing suit against the union.  In both instances, all parties are bound to follow the internal grievance procedures, before initiating suit under Section 301 of the LARA, absent a justifiable excuse (*i.e.*, repudiation or failure to process grievance).

8

Like the plaintiffs in <u>Anderson</u>, Prism has not set forth sufficient facts to support a finding that it ever filed grievances, much less that the Union refused to process them. Neither has Prism set forth sufficient facts to support a finding that the Union in any other way repudiated the Agreement.[3] Therefore, Prism is not

---

[3]In its memorandum in opposition, the Plaintiff supports its repudiation argument, as follows:

> In the case presently at bar, Plaintiff has presented unrefuted evidence that Defendant has refused to consider its grievances and refused to participate in the grievance process. Additionally, Defendant filed suit against Plaintiff in both the Montgomery County and Clinton County Courts of Common Pleas in connection with payments allegedly due under the terms of the collective bargaining agreement without first even attempting to grieve the matters. Under these circumstances summary judgment on this point is clearly inappropriate as Defendant has clearly repudiated the remedial procedures in the collective bargaining agreement.

Doc. #21 at 10. The Plaintiff provides no cites to support these statements, although earlier in its memorandum, the Plaintiff relied on the Meece Affidavit, in stating that, "without properly grieving the matters first, [Defendant] began to lien Plaintiff's jobs and sued Plaintiff in two separate actions in the Montgomery County and Clinton County Courts of Common Pleas." <u>Id.</u> at 7 (citing <u>id.</u> at 19 ¶ 22 (Meece Aff.)).

In response, the Union states that the law suits it filed were actions to enforce mechanics' liens, which are individual rights of employees under statute, and thus did not violate the terms of the Agreement. Doc. #22 at 4. It has filed the complaints in those actions as proof. Doc. #22 Attach. #1. (The filed copies of these complaints are not authenticated. Since there is no dispute between the parties as to the contents of these documents, the Court will rely upon them, in ruling on the issues presented here. Specific instructions are given to Defendant, at the conclusion of this Decision, however, regarding placing this evidence in proper Rule 56 form. Failure to comply will cause this Court to vacate its ruling herein.)

It is also noteworthy that those complaints were not filed until after the break-down between the parties to this action, which was well after the required 14 day grievance filing time period. <u>Id.</u> (indicating that the law suits were filed sometime after September 2002). The Union further points to the fact that it filed

9

entitled to claim the exception to the general rule that it must exhaust contractual grievance procedures prior to bringing suit. For these reasons, the Defendant's Motion for Summary Judgment (Doc. #12), as to the Plaintiff's First Cause of Action, is SUSTAINED.

III.   SECOND CAUSE OF ACTION – FRAUDULENT INDUCEMENT IN EXECUTION OF COLLECTIVE BARGAINING AGREEMENT

Prism's second claim is that the Union made promises to induce Prism to sign the Agreement and then did not comply with the terms of the promises,[4] to wit: (i) the Defendant agreed to provide the Plaintiff with funds to complete its existing open shop work at union rates; (ii) the Defendant agreed to provide market recovery funds to allow the Plaintiff to maintain its market share; and (iii) the

---

a grievance against Prism, in October 2001, to demonstrate that it intended to adhere to the terms of Agreement. Doc. #22 at 4. Prism asserts nothing to contradict the facts and inferences drawn therefrom indicating that the Union did adhere to the terms of the Agreement in respect to grievance procedures.

[4]Without specifically so stating in its Complaint, the Plaintiff is alleging fraudulent inducement. See Doc. #1 (Compl.), Doc. #21 (Pl.'s Mem. Opp'n) at 11-13. Under Ohio law, a contract may be rescinded when it is procured by fraudulent inducement. Micrel, Inc. v. TRW, Inc., 486 F.3d 866, 873-874 (6th Cir. 2007) (citing Household Fin. Corp. v. Altenberg, 5 Ohio St. 2d 190, 214 N.E.2d 667, 669-70 (Ohio 1966)). In order to prove fraudulent inducement, a plaintiff must establish "(1) a false representation concerning a fact or, in the face of a duty to disclose, concealment of a fact, material to the transaction; (2) knowledge of the falsity of the representation or utter disregard for its truthfulness; (3) intent to induce reliance on the representation; (4) justifiable reliance upon the representation under circumstances manifesting a right to rely; and (5) injury proximately caused by the reliance." Id. (quoting Lepera v. Fuson, 83 Ohio App. 3d 17, 613 N.E.2d 1060, 1063 (Ohio Ct. App. 1992)).

Defendant agreed to aid the Plaintiff in entering the "union only" market by referring customers directly to the Plaintiff. Doc. #1 at 3-4.  In the Union's Motion and in the parties' supporting memoranda, the parties argue about whether federal labor law preempts this claim, thus giving the National Labor Relations Board jurisdiction rather than the courts.

As to the federal law on point, both § 301(a) of the Labor Management Relations Act (29 U.S.C.S. § 185(a)) and §§ 7 and 8 of the National Labor Relations Act (29 U.S.C.S. §§ 157-158) exercise preemptive effect over state law tort claims that fall within their respective terms.  However, the standards for preemption under each statute, and the effects of the preemption, if found, are different. Alongi v. Ford Motor Co., 386 F.3d 716, 723 (6th Cir. 2004).

    A.    <u>Jurisdiction under § 301(a) of the Labor Management Relations Act (29 U.S.C. § 185(a))</u>

On the issue of federal subject matter jurisdiction, § 301(a) of the Labor Management Relations Act (29 U.S.C. § 185(a)) provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties . . . ."  In ruling on the applicability of this Section to a challenge of fraudulent inducement in the execution of a collective bargaining agreement, the Supreme Court held that federal courts have jurisdiction under § 301(a) only for alleged <u>violations</u> of collective bargaining

11

agreements, as opposed to cases involving the alleged <u>invalidity</u> of such agreements. <u>Textron Lycoming Reciprocating Engine Div. v. United Auto., Aerospace & Agric. Implement Workers of Am.</u>, 523 U.S. 653 (1998). The Sixth Circuit has interpreted this holding to mean that "a simple claim of fraudulent inducement to sign a labor contract, without more, is not a 'suit for violation of contracts [but, rather, is a suit pertaining to the validity of contracts],' and so is not pre-empted by § 301," and can, therefore, be brought in state court. <u>Alongi</u>, 386 F.3d at 725. If a claim as to the validity of such an agreement is brought alongside a claim for a violation of the agreement, however, courts may rule on the validity issue as an ancillary matter to the violation issue. <u>Textron</u>, 523 U.S. at 657-58.

Therefore, under § 301(a), this Court may exercise supplemental jurisdiction over the fraudulent inducement claim, since Prism originally brought that action together with the action for breach of the same agreement. Now that the Court has dismissed the breach of contract claim, however, the Court may decline to exercise supplemental jurisdiction over the fraudulent inducement claim. 28 U.S.C.S. § 1367(a), (c)(3); <u>Robert N. Clemens Trust v. Morgan Stanley DW, Inc.</u>, 485 F.3d 840, 853 (6th Cir. 2007) (affirming district court's decision to decline to exercise supplemental jurisdiction over plaintiffs' claim under state law, which paralleled the language in plaintiffs' federal claim under Securities and Exchange Commission's Rule 10b-5, codified at 17 CFR 240.10b-5 (Employment of

Manipulative and Deceptive Devices), since the court had previously dismissed all federal claims); Pearson v. UAW Int'l Union, UAW Local 140, 2002 U.S. Dist. LEXIS 14917, **11-12 (E.D. Mich. 2002) (refusing to exercise supplemental jurisdiction over state law defamation claim, once court dismissed Section 301 claim).  An analysis of the other applicable federal labor law provision makes that decision unnecessary, however.

> B. Jurisdiction under the National Labor Relations Act (29 U.S.C. §§ 157 & 158)

Section 7 of the National Labor Relations Act ("NLRA") (29 U.S.C. § 157) affirms employees' rights to "form, join, or assist labor organizations" and to "bargain collectively" with their employers, while § 8 (29 U.S.C. § 158) prohibits various "unfair labor practices" that interfere with that right.  Along with § 301 of the Labor Management Relations Act, an analysis of § 8 of the NLRA is also pertinent to the question of this Court's jurisdiction over the Plaintiff's state law fraud claim.  The question the Court must answer is whether the Plaintiff's fraud claim has been preempted by the NLRA.  If so, the National Labor Relations Board ("NLRB"), as opposed to the Court, is the primary tribunal to decide the issue. San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 244-245 (1959).

In answering the preemption question, the Court must decide whether the case "arises under § 8 of the NLRA" and, thus, makes the NLRB the proper adjudicating body.  The Supreme Court sets forth the following approach to such

questions:

> First, we determine whether the conduct [at issue] is actually or arguably protected or prohibited by the NLRA. San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 245 (1959); see Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters, 436 U.S. 180, 187-190 (1978).  Although the "Garmon guidelines [are not to be applied] in a literal, mechanical fashion," Sears, supra, at 188, if the conduct at issue is arguably prohibited or protected, otherwise applicable state law and procedures are ordinarily pre-empted. Farmer v. United Brotherhood of Carpenters & Joiners, 430 U.S. 290, 296 (1977).  When, however, the conduct at issue is only a peripheral concern of the Act or touches on interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, it could not be inferred that Congress intended to deprive the State of the power to act, we refuse to invalidate state regulation or sanction of the conduct. Garmon, supra, at 243-244.  The question of whether regulation should be allowed because of the deeply rooted nature of the local interest involves a sensitive balancing of any harm to the regulatory scheme established by Congress, either in terms of negating the Board's exclusive jurisdiction or in terms of conflicting substantive rules, and the importance of the asserted cause of action to the State as a protection to its citizens. See Sears, supra, at 188-189; Farmer, supra, at 297.

Local 926 Int'l Union of Op. Eng'rs v. Jones, 460 U.S. 669, 676 (1983).  Thus, the general rule is that otherwise applicable state law is preempted, if the conduct at issue is arguably prohibited or protected by the NLRA. Id.  The rule does not apply if the conduct is only a peripheral concern of the NLRA, or if it touches on interests "so deeply rooted in local feeling and responsibility" that, in the absence of compelling congressional direction, it could not be inferred that Congress intended to deprive the states of the power to act. Id.

An analysis of § 8 of the NLRA shows that the conduct at issue here –

fraudulent inducement of the collective bargaining agreement – is arguably, if not definitely, prohibited by the NLRA.  Section 8 requires the parties to a collective bargaining agreement to bargain in good faith.  Specifically, that Section provides, "to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to . . . confer in good faith with respect to . . . terms and conditions of employment, or the negotiation of an agreement . . . ." 29 U.S.C. § 158(d).

In Serrano v. Jones & Laughlin Steel Co., 790 F.2d 1279 (6th Cir. 1986), the Sixth Circuit applied this statutory language to a similar allegation of fraud in the inducement of a collective bargaining agreement.  The plaintiffs/employees in Serrano asserted three fraud allegations, pertaining to the execution of a collective bargaining agreement, against the defendant/employer.[5]  In holding that the fraud claims concerned conduct "arguably prohibited" by § 8 of the NLRA, the Sixth Circuit noted that § 8(d) "requires an employer to bargain in good faith with respect to wages, hours and other terms and conditions of employment," and, specifically as to the fraud claims pled by the Serrano plaintiffs, "no matter how it is stated, the gravamen of the three fraud charges is that [the employer] did not bargain in good faith in obtaining concessions from the Union in the . . .

---

[5] The fraud claims were pendant state law claims. Serrano, 790 F.2d at 1282.  The plaintiffs asserted jurisdiction under § 301 of the Labor Management Relations Act with respect to a breach of contract claim, as to the collective bargaining agreement at issue. Id.

15

agreement." Id. at 1286.

The Serrano Court next turned to the issue of whether the exception to preemption applied to the fraud claims in that case. In holding that the exception did not apply, the Court initially determined that failure of a party to bargain in good faith "strikes at the heart of one of the basic concerns of [federal labor] law," rather than being only a peripheral concern. Id. at 1287; see also 29 U.S.C. § 158(d) (defining the "obligation to bargain collectively" to include the mutual obligation to bargain "in good faith"). The Court further determined that preemption of the fraud claims would not "'intrude so deeply into areas traditionally left to local law' as to upset the traditional federal-state balance." Serrano, 790 F.2d at 1287 (contrasting cases with types of "deep intrusion" necessary to fulfill standard (e.g., libel, mass picketing, threats of violence)) (citations omitted).

In applying the preemption standard, as set forth by the Supreme Court and as applied by the Sixth Circuit in Serrano, it is clear that federal law preempts state law in the present case. Preemption is proper because the Plaintiff's allegations of fraud are, in essence, allegations that the Defendant did not bargain in good faith and are, thus, arguably protected by § 8 of the NLRA. Also, the recognized exceptions to the preemption rule do not apply because an allegation of unfair bargaining strikes at the core of one of the basic concerns of the NLRA, and, further, federal jurisdiction of this matter does not intrude so deeply into areas

traditionally left to local law as to upset the traditional federal-state balance.  Thus, federal law preempts this area of labor law, giving the NLRB exclusive jurisdiction over the dispute.

In sum, although this Court could choose to exercise supplemental jurisdiction over the fraudulent inducement claim under § 301(a) of the Federal Labor Management Act, § 8 of the NLRA gives exclusive federal jurisdiction over the dispute to the NLRB.  For these reasons, the Plaintiff's Second Cause of Action is hereby DISMISSED, without prejudice.

IV.     CONCLUSION

The Defendant's Motion for Summary Judgment is SUSTAINED as to the First Cause of Action in the Plaintiff's Complaint.  The Second Cause of Action in the Plaintiff's Complaint is DISMISSED, without prejudice to reassert before the NLRB.

All rulings hereunder are made on the condition that the Defendant provides proper Rule 56 evidence of the following, to the Court within ten (10) calendar days of the date of this Order:  the collective bargaining agreement entered as Docket #15; the letters included at pages 8-12, of Attachment #2 to Docket #15; and, the complaints attached as Attachment #1 to Docket #22.  Failing this, the Decision and Judgment entered hereon will be vacated.

Judgment will be ordered to enter in favor of Defendant and against Plaintiff,

on the First Cause of Action in the Plaintiff's Complaint, and dismissing the Plaintiff's Second Cause of Action without prejudice to refiling before the NLRB, subject to any defenses the Defendant may have or wish to interpose.

The above captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

September 11, 2007

                                      /s/ Walter Herbert Rice
                                 WALTER HERBERT RICE, JUDGE
                                 UNITED STATES DISTRICT COURT

Copies to:
Counsel of record